HAMILTON, Senior Circuit Judge,
dissenting.
The government brought this case under the theory that the 45,000 bushels of corn, contained in sixty-eight truckloads, were harvested in 1992 and not, as the defendants claimed, in 1991 or earlier. The government’s case centered around proving that the high moisture reading patterns as reflected on the grain tickets could not be achieved in the manner for adding moisture described by the defendants (rehydrating the corn in storage and/or with a garden hose while being loaded on trucks for shipment to the grain dealer) and, thus, the corn had to have been harvested in 1992. The government introdueed evidence, through its two experts, that the actual moisture reading patterns obtained from the 45,000 bushels of corn, as reflected on the grain tickets, were indicative of corn harvested from the fields and not from storage bins, and that the moisture reading patterns of the 45,-000 bushels of corn, as reflected on the grain tickets, could not have been obtained as James Howard described (by wetting corn in storage and/or rehydrating the corn with a garden hose as it was being loaded (sixty-eight truckloads) for delivery to the grain dealer). The government also introduced evidence demonstrating that adding moisture to the exterior surface of the corn would create highly unstable and unpredictable moisture patterns depending on the temperature, humidity, evaporation, sample taken, and time elapsed, and that James Howard’s purported method for storing and rehydrating corn was not practical, logical, or economically beneficial. Stated simply, the government’s theory of the case was that, while one could add a small amount of water to a small sample of corn and obtain an increased moisture reading on the Dickey John, one could not add the large amounts of water described by the defendants to 45,000 bushels of corn and obtain the moisture reading patterns as reflected on the grain tickets.
As recognized by the majority, the gist of the defendants’ defense centered around an explanation concerning the high moisture reading patterns, as reflected on the grain tickets, for the 45,000 bushels of corn. According to the defendants, the high moisture reading patterns, as re- *122 fleeted on the grain tickets, occurred because they had sprayed water on the 45,-000 bushels of corn either during storage and/or during the transfer of the corn from storage bins into the trucks (sixty-eight truckloads) used to transport the corn to the grain dealer.
To rebut the government’s case and to prove the validity of their defense, the defendants introduced the expert testimony of, and an in-court experiment conducted by, Harold Smith, the grain dealer who purchased the 45,000 bushels of corn and paid the defendants under the false name of Jack Peele. Even though Harold Smith had no knowledge, skill, experience, training, or education sufficient to render an opinion concerning how one could add the large amounts of water described by the defendants to 45,000 bushels of corn and obtain the moisture reading patterns as reflected on the grain tickets, he was permitted to render an opinion establishing this theory.
On direct examination, over the government’s objection, Harold Smith opined that the Dickey John “checks the corn from the inside out ... [and that it] won’t check moisture on the outside of the corn.” (J.A. 441). Harold Smith also opined that, if you spray water on corn, “it will give enough moisture going inside the corn to raise the thing on the Dickey John.” (J.A. 441). Then, after asking Harold Smith whether he had “tested this Dickey John to indicate whether moisture can be increased in the corn,” (J.A. 442), defense counsel asked Harold Smith to describe his “tests” for the district court. (J.A. 443). Over the government’s continued objection, Harold Smith testified about his tests with using water to increase the moisture level of corn when tested by the Dickey John, describing how adding squirts of water to a corn sample raises the moisture reading of the corn sample. Harold Smith then conducted an in-court experiment which involved using the Dickey John to measure the moisture content of a small sample of dry corn, then spraying water on the small sample of corn, waiting approximately fifteen minutes, and having the Dickey John measure the moisture content of the small sample of wet corn. Through this experiment, the defendants sought to prove that one could add the large amounts of water described by the defendants to 45,000 bushels of corn and obtain the moisture reading patterns as reflected on the grain tickets.
Faced with Harold Smith’s expert opinion and experiment, the government, on cross-examination, was forced to discredit Harold Smith, not as a lay witness, but rather as an expert. On cross-examination, Harold Smith admitted that he had no personal knowledge of farmers adding water to corn to change the moisture level of the corn; that he had no education or training concerning corn; that he did not know what method James Howard used for adding moisture to corn; that he was not aware of any machine that allowed farmers to add moisture to corn by the truckload; and that he did not know how much water was added by the defendants to the 45,000 bushels of corn. Notwithstanding all of this testimony suggesting that he knew nothing about the issue of whether the moisture level of corn could be manipulated in the manner described by the defendants, Harold Smith opined that the minor spraying in his experiment was the equivalent to the contentions of the defendants concerning the “volume of water placed on the corn by use of a garden hose as the corn came from the storage bin via auger to the truck for transportation to the market.” (J.A. 550).
Unfortunately for the defendants, Harold Smith was never identified by them as an expert witness and no expert report *123 was provided pertaining to Harold Smith; consequently, his testimony, to the extent he rendered expert opinions, was inadmissible. Fed.R.Civ.P. 26(a)(2). Second, the defendants made no effort to qualify Harold Smith as having the knowledge, skill, experience, training, or education to render expert opinion testimony admissible under Rule 702 of the Federal Rules of Evidence.[1] Moreover, the defendants did not establish, and the district court did not elicit evidence of, any expertise on Harold Smith’s part based upon knowledge, skill, experience, training, or education that would qualify him to opine on the issue of whether the high moisture reading patterns as reflected on the grain tickets could have been obtained in the maimer described by the defendants. Harold Smith testified that he was not a scientist, that he had no training and little knowledge about the internal characteristics of corn, that he had simply been told how the Dickey John worked, and that he had “mash[ed]” the button on the Dickey John for about twenty-five years. (J.A. 457). Thus, there was no basis upon which Harold Smith legitimately could be qualified as an expert witness on corn moisture or on how one could add the large amounts of water described by the defendants to 45,-000 bushels of corn and obtain the moisture reading patterns as reflected on the grain tickets. Accordingly, Harold Smith’s testimony, to the extent that it rendered expert opinions, was inadmissible under Rule 702.[2]
In the “Findings of Fact” section of its order, the district court made two findings concerning the testimony of Harold Smith: (1) “[t]he court finds, through the testimony of grain buyer Harold Smith and his demonstration with the actual Dickey John used to measure the moisture content of the disputed 45,000 bushels of corn, that it is possible to spray water onto corn and thereby raise the moisture content mea *124 surement on the Dickey John,” (J.A. 553); and (2) “[t]he afore-mentioned demonstration in the court showed that spraying water on corn with an initial content of 13.8 could raise the moisture level of the corn to approximately 19.5, an increase of 5.7” (J.A. 553). In its “Findings of Fact” section, the district court did not mention any of the government’s evidence which demonstrated that, while one could add a small amount of water to a small sample of corn and obtain an increased moisture reading on the Dickey John, one could not add the large amounts of water described by the defendants to 45,000 bushels of corn and obtain the moisture reading patterns as reflected on the grain tickets. Indeed, the district court made no findings concerning the government’s two experts.
In its “Conclusions of Law” section, the district court does not mention how the government failed to prove its case; rather the district court stated in relevant part as follows:
(1) The plaintiff has failed to meet the requisite burden of proof needed to prove by a “preponderance of the evidence” that defendant made false claims to obtain crop insurance indemnity payments and disaster assistance payments that contained false statements regarding the 1992 crop production and losses.
(2) The plaintiff is unable to meet the requisite burden needed to prove by a preponderance of the evidence that defendant obtained the crop insurance indemnity payments and disaster assistance payments by committing common law fraud, mistake of fact theory, the unjust enrichment theory, or the False Claims Act, 31 U.S.C. § 3729.
(J.A. 553-54).
While recognizing that the district court relied in part on Harold Smith’s testimony and experiment, ante at 120, the majority in this case nevertheless takes the view that we should affirm because the district court did not rely on any of the “objected — to opinion testimony in its order,” ante at 121, and, therefore, any error is harmless. With all due respect, the majority has a myopic view of the record.
Throughout the trial and during the district court’s colloquy on the defendants’ Rule 52(c) motion, the district court seemed to believe that Harold Smith’s expert testimony and the results of his experiment destroyed the government’s case. See, e.g., (J.A. 513-14) (“through history in this court, this case will be known as the Dickey John case”); (J.A. 514) (“I understand [the government’s] expert comments ... but if there were 12 people sitting in that [jury] box yesterday, ... when I saw it register 13.8 and then the same corn go back in 15 minutes later after it had been sprayed to 19.5. I mean that is classic evidence to shoot that theory down.”); (J.A. 523) (‘You going to finish up by telling me why the Dickey John thing shouldn’t impress me?”); (J.A. 545) (captioning the case “The Dickey John Case”). Harold Smith’s expert testimony provided the only evidence that effectively contradicted the testimony of the government’s two experts that the reported moisture reading patterns as reflected on the grain tickets for the 45,000 bushels of corn were 1992 production rather than stored corn, harvested in years prior to 1992. Indeed, in the absence of Harold Smith’s expert testimony, the testimony of the government’s two experts that dry stored corn could not be rehydrated to the moisture reading patterns as reflected on the grain tickets would have been uncontroverted. Having cited to and unmistakably relied upon the inadmissible expert testimony, the district court understandably made no mention of the government’s experts in its findings of fact. In short, I cannot conclude that the district court’s erroneous *125 reliance on Harold Smith’s expert testimony was harmless because the district court appears to have been too heavily swayed by Harold Smith’s inadmissible expert testimony. For these reasons, I would remand for a new trial.

. Rule 702 provides as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Fed.R.Evid. 702.

. Nor was Harold Smith’s testimony admissible as the opinion testimony of a lay witness under Rule 701. Rule 701 expressly limits the opinion testimony of non-experts to, inter alia, opinions which are "rationally based on the perception of the witness” and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.” Fed.R.Evid. 701. In this case, much of the testimony of Harold Smith was based upon unstated and untested assumptions about the experiment that he was conducting and how his experiment related to what was or could have been done under actual farm conditions. It appeared that Harold Smith could not perceive anything more about his experiment (observing only the exterior of the Dickey John and what appeared to be done to the small corn sample) than the fact-finder and others present. Furthermore, any comparisons between Harold Smith’s experiment and what the defendants claimed to have done was not based on reason, but rather, on pure speculation. Harold Smith may have been experienced in the operation of the Dickey John, but the record does not reflect that he had any experience in determining whether one could add the large amounts of water described by the defendants to 45,000 bushels of corn and obtain the moisture reading patterns as reflected on the grain tickets. Harold Smith’s expertise regarding pushing the button on the Dickey John proved nothing, but the defendants attempted, through his testimony and experiment, to prove their claim that sixty-eight truckloads of corn (45,000 bushels) were rehydrated to the moisture reading patterns as reflected on the grain tickets.